## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PAUL CLARK,

      Plaintiff,

v.

COUNTY OF WAYNE et al.,

      Defendants.

_____/

Case No. 24-11949
Hon. Jonathan J.C. Grey

## <u>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (ECF NO. 46)</u>

## I.    INTRODUCTION

On July 29, 2024, Plaintiff Paul Clark filed a complaint against the County of Wayne ("Wayne County"), the City of Highland Park ("Highland Park"), the City of Detroit ("Detroit"), and Frank Pasternacki, Gerald Stewart, Peter Szymanski, David Zablocki, Rashelle Pettway, William Presley, David Kramer, William Avery, Gregory Trozak, Raymond Nemeckay, Dennis Blazs, James Flemming, and Charles David, all officers employed by the Detroit Police Department ("DPD") (collectively, the "defendants"). (ECF No. 1.) Clark alleges the defendants violated his Fourth and Fourteenth Amendment rights under 42 U.S.C.

§ 1985 and 42 U.S.C. § 1983. (*Id.*) Clark also alleges state law claims of gross negligence and malicious prosecution against the DPD officers. (*Id.*)

On March 31, 2025, this Court granted Wayne County's, Highland Park's, and Detroit's motions to dismiss, dismissed Counts VI and VII of the complaint, and terminated those parties from the suit. (ECF No. 55.) On October 25, 2024, Pasternacki, Stewart, and Blazs (collectively "the officers") filed a motion to dismiss in lieu of an answer. (ECF No. 46.) The motion is fully briefed. (ECF Nos. 49, 51.)  The Court finds that oral argument will not aid in its disposition of the motion; therefore, it dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

For the reasons stated below, the motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## II.   BACKGROUND

In 1987, two murders with "extremely similar facts occurred within 10 blocks of each other in Highland Park, Michigan—one in February and one in May." (ECF No. 1, PageID.2.) Despite the existence of favorable evidence, Clark was wrongfully convicted of the February murder. Clark now brings this action against Pasternacki, Stewart, and

Blazs, DPD officers that he alleges were involved in his arrest and eventual conviction.

## A.    February Murder

On February 16, 1987, Trifu Vasilije left a bar located in Highland Park with a female sex worker. (ECF No. 1, PageID.15.) The two were followed by a Black man who attempted to rob Vasilije. (*Id.*) The "evidence suggests Vasilije slashed the armed assailant on the left side of his face with a hook knife." (*Id.*) The assailant then fatally shot Vasilije and fled. (*Id.*) Five individuals, including police officers, testified to witnessing a knife clenched in Vasilije's right hand. (*Id.*) The knife was destroyed in 2004, and DPD asserts that no tests were ever run on it. (*Id.*, PageID.16.)

Two men claimed to be eyewitnesses to the murder: Roger Estell and Ed Davis. Estell initially stated that a man named Winton Miller committed the crime, but six months later, Estell told the police he lied, and that Clark was the perpetrator. (*Id.*) The second eyewitness, Davis, claimed he was driving near the bar when he saw a Black man cross the street, approach Vasilije and a woman, and commit the crime. (*Id.*,

PageID.17.) While Davis did not pick Clark out at the line-up, he identified Clark at the preliminary examination. (*Id.*)

The night Vasilije was murdered, Clark was at home with his sister and girlfriend. (*Id.*) Nonetheless, officers arrested Clark on August 22, 1987; he was tried and convicted of first-degree felony murder and ultimately sentenced to life without parole. (*Id.*, PageID.14, 18.)

### B.   May Murder

On May 2, 1987, Alex Scott approached two men, Chad Kumaus and Edward Krawiecki, as the two stood in front of a house in Highland Park. (*Id.*) Scott robbed the men at gunpoint and fatally shot Krawiecki before he fled. (*Id.*) Kumaus testified and identified Scott in court at the preliminary examination, and Scott pleaded guilty to the murder in July 1987. (*Id.*) Kumaus testified that Scott accosted the two men right after they solicited sex workers. (*Id.*, PageID.19.) Krawiecki's murder in May occurred one block away from Vasilije's murder in February. (*Id.*)

### C.   Clark's February Conviction is Vacated

In January 2020, the Wayne County Conviction Integrity Unit produced various mugshots taken of Scott before and after Vasilije's murder. (*Id.*, PageID.21.) The mugshots taken prior to Vasilije's murder

show no facial scarring. (*Id.*) However, mugshots taken on March 29, 1987 show Scott with a wounded left cheek. Consistent with prior testimony that Vasilije was found with a hook knife in his right hand, the wounded left cheek suggests that Vasilije "slashed the perpetrator on [his] left side."(*Id.*, PageID.21–22.) Additionally, by 2020, Clark had gathered two affidavits implicating Scott as the assailant in the February murder. (*Id.*, PageID.19–21.)

On April 24, 2024, the trial court granted Clark's fourth motion for relief from judgement, finding that a *Brady* violation inadvertently occurred, which entitled him to a new trial. (*Id.*, PageID.24, 28.) On July 23, 2024, all charges and proceedings against Clark were dismissed, and Clark was released. (*Id.*, PageID.28.) Clark spent nearly 37 years wrongfully incarcerated for the murder of Vasilije. (*Id.*, PageID.15, 36.)

### D.   **Pasternacki, Stewart, and Blazs**

As alleged in the complaint, Pasternacki was employed by the DPD and was "the Officer in Charge of the February 1987 murder." (*Id.*, PageID.6.)  Stewart was employed by the DPD as an inspector and "was the Commanding Officer of the February 1987 murder." (*Id.*, PageID.7.) Pasternacki reported to Stewart. (*Id.*) As such, both men knew the facts

of the February murder including, but not limited to, using a sex worker to solicit victim(s), the armed robbery, a gunshot victim, the bloody knife, and ballistic evidence. (*Id.*, PageID.6–7.) "Pasternacki [and Stewart] also had knowledge of Scott's May 1987 murder, including, but not limited to, the use of a sex worker to solicit victim(s) he would then rob at gunpoint, and a gunshot victim." (*Id.*) This alleged knowledge appears to be based on "the temporal and physical proximity of the two murders (less than two blocks apart)." (*Id.*)

Blazs was employed by the DPD as a police officer in the homicide section. (*Id.*, PageID.14.) Clark alleges that Blazs was an arresting officer and arrested Clark despite knowing: (1) the similarities between the February and May murders, and (2) that Scott already pleaded guilty to the May murder in July 1987. (*Id.*)

## III. LEGAL STANDARD

### Rule 12(b)(6)

Under Civil Rule 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and

draws all reasonable inferences in the plaintiff's favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" but must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do.").

Although the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the court need not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–679 (citation and internal quotation marks omitted). The complaint is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678; *see also 16630 Southfield Ltd. v. Flagstar Bank*, F.S.B., 727 F.3d 502, 504 (6th Cir. 2013) ("The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct.").

## IV. ANALYSIS

### A. Sufficiency of the Complaint

The officers start with a catch-all argument, asserting the entire complaint warrants dismissal because it lacks specificity and particularity. As their sole authority, the officers cite *Pineda v. Hamilton Cnty.,* 977 F.3d 483, 492 (6th Cir. 2020) (citation omitted), which states, "a plaintiff does not meet [the summary judgment] burden by showing only that a defendant was 'one of' several others who might have committed the unconstitutional act."

The officers contend that the complaint fails because it alleges "the Officer Defendants were one of several who might have violated [Clark's] constitutional rights." (ECF No. 46, PageID.860.) However, the officers quickly concede that the complaint includes a paragraph regarding each officer's alleged conduct. (*Id.*) They then assert that "[Clark] fails to allege how any of this purported conduct fits within the elements of each of the numerous allegations" and that he "merely inserts the boilerplate elements of the claims without connecting the allegations to the conduct of any particular Defendant." (*Id.*, PageID.860–861.) In their reply, the officers further argue the insufficiency of the complaint by stating that

8

Clark "fails to allege sufficient involvement in the investigation of the February Murder, especially as to Officer Blazs" and "fails to allege any plausible facts establishing in any way how/why the Officer Defendants somehow acquired the details of the May Murder." (ECF No. 51, PageID.1001.) In response, Clark notes each officer's respective paragraph detailing their alleged involvement. (ECF No. 1, PageID.6–7, 14)

The Court first finds that the complaint clearly alleges individual conduct for Pasternacki, Stewart, and Blazs. (*Id.*) Next, while the Court will address *specific* arguments as to deficiencies in Clark's claims, it does not sua sponte identify the element of each cause of action and determine whether each claim is sufficiently pleaded as to each officer. Each claim requires a different legal analysis, and the Court will only address plausibility arguments as they relate to a specific claim. Therefore, because the Court refrains from conducting a general, claim-by-claim analysis sua sponte, it **DENIES** the officers' motion to dismiss on the basis that the entire complaint lacks particularity and specificity.

**B.**   *Brady* **Claim (Count I)**

The officers argue for dismissal of Clark's *Brady* claim on multiple grounds, all of which go to factual disputes. Disputes of fact are handled at the motion for summary judgment stage, not on a motion to dismiss. At this stage, the Court, construing the complaint in the light most favorable to Clark and drawing all reasonable inferences in Clark's favor, finds that Clark sufficiently alleged a *Brady* claim against the officers.

*Brady* claims consist of three elements: "[1] the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." *Jackson v. City of Cleveland*, 925 F.3d 793, 814 (6th Cir. 2019) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–282 (1999)). "Prosecutors are not the only state actors bound by *Brady*, ... 'police can commit a constitutional deprivation analogous to that recognized in *Brady* by withholding or suppressing exculpatory material.'" *Id.* (quoting *Moldowan v. City of Warren*, 578 F.3d 351, 379 (6th Cir. 2009)).

Here, the complaint clearly alleges a *Brady* claim. Clark asserts that the officers knowingly withheld exculpatory or impeachment

10

evidence. Specifically, evidence that two murders with very similar facts occurred within 10 weeks and two blocks of each other, including the May murder, which Scott pleaded guilty to, Scott's mugshots, DNA from the knife from the February murder, and ballistic evidence from both murders. (ECF No. 1, PageID.39.)

Whether *every piece* of alleged exculpatory evidence is, in fact, *Brady* and attributable to the officers, as opposed to the prosecutors, will reveal itself through discovery. At this stage, however, Clark has sufficiently pleaded that the officers suppressed *at least some* evidence favorable to Clark, resulting in his conviction. Thus, the Court **DENIES** the officers' motion to dismiss Count I.

### C.    Conspiracy Claims (Counts II and III)

The officers argue for dismissal of Clark's § 1985 and § 1983 conspiracy claims on two grounds. First, they argue that the intracorporate conspiracy doctrine applies and bars both claims. While the Court agrees that the doctrine applies to these claims, it refrains from determining whether the officers were acting outside the course of their employment at the motion to dismiss stage.  Second, the officers contend that Clark's § 1985 conspiracy claim fails to plead invidious

discriminatory animus, making dismissal appropriate. The Court agrees that Clark failed to sufficiently plead his § 1985 claim.

### 1.   *Intracorporate Conspiracy Doctrine*

The intracorporate conspiracy doctrine applies to suits brought under § 1983, § 1985(2), and § 1985(3). *Jackson*, 925 F.3d at 817, 819 (6th Cir. 2019). The doctrine states that if "all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991); *Jackson*, 925 F.3d at 817. In other words, "members of the same legal entity acting within the scope of their employment cannot form a conspiracy as two separate 'people.'" *Marvaso v. Sanchez*, 971 F.3d 599, 607 (6th Cir. 2020) (citation omitted).

An exception to the doctrine exists "when employees act outside the course of their employment." *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 841 (6th Cir. 1994). This exception accounts for the "distinction between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place." *Id.* at 840. "[W]hen employees act outside the course of their employment, they and the corporation may form a conspiracy." *Id.* at 841. If defendants

dispute the allegation that they were acting outside the course of their employment, such an argument "should be considered on a motion for summary judgment … rather than on a motion to dismiss." *Marvaso*, 971 F.3d at 607.

### a.    Intracorporate Conspiracy Doctrine Applies

Here, the officers argue that the doctrine applies because they are all employed by DPD. In support, they cite to *Nixon v. City of Detroit*, No. 2:23-CV-11547, 2024 WL 4363117 (E.D. Mich. Sept. 30, 2024), where the plaintiff brought a conspiracy suit against multiple officers. There, "[a]ll known Defendants were police officers or otherwise employed by the Detroit Police Department, and thus part of the same collective entity." *Id.* at *10 (internal quotation marks omitted). In *Nixon*, the plaintiff attempted to plead around the intracorporate conspiracy doctrine by asserting that "the Officers not only conspired among themselves, but also with a private party." *Id.* While the court acknowledged this possibility, it found that because the plaintiff "ha[d] not *sued* the private-party informant, instead *only naming Defendants who were employed by*

13

*the City* … [t]he intracorporate-conspiracy doctrine … bar[red] his claim." *Id.* (emphasis added).

Clark similarly attempts to distinguish those involved in the misconduct by connecting a prosecutor and individual Highland Park police officers to the alleged conspiracy. (ECF No. 49, PageID.963.) As in *Nixon*, the Court looks at whether the *named defendants* are all employed by the same entity.[1] The remaining defendants in this case are all officers employed by the DPD.[2] Thus, the Court finds that the intracorporate conspiracy doctrine applies to Clark's § 1983 and § 1985 conspiracy claims.

---

[1] Clark cites to *Stillwagon v. City of Delaware*, 175 F. Supp. 3d 874 (S.D. Ohio 2016), and *Ballard v. Cope*, No., 2023 WL 1452076 (E.D. Ky. Feb. 1, 2023), as bases for courts finding the intracorporate conspiracy doctrine inapplicable when members of a conspiracy extend beyond a single entity. However, in both *Stillwagon* and *Ballard*, each alleged co-conspirator *was also a named defendant in the respective suit*. In *Stillwagon*, the plaintiff brought a conspiracy claim against *both* police officers and his assailant, and the court found that "[the assailant] is not, and was not, a member of the Delaware Police Department. … Thus, the Police Defendants and [the assailant] [were] not a part of 'the same legal entity' as envisioned by the intra-corporate conspiracy doctrine." 175 F. Supp. 3d at 902. Similarly, the three alleged co-conspirators in *Ballard* were all named defendants, one of which was plausibly a separate entity from the other two co-conspirators. 2023 WL 1452076, at *1, *8.

[2] Wayne County, Highland Park, and Detroit were dismissed from this action. (ECF No. 55.) Even if Highland Park, which operated the Highland Park Police Department ("HPPD"), (ECF No. 1, PageID.6), was still part of the lawsuit, nowhere in the complaint does Clark assert that the alleged conspiracy existed between HPPD officers and DPD officers. Clark's claims against Wayne County, Highland Park, and Detroit were exclusively premised on *Monell* violations. (*Id.*, at PageID.52-53.)

### b.    Course of Employment Exception

The Court next considers whether the officers were acting outside of the course of their employment. *See Johnson*, 40 F.3d at 841. Even if a dispute about this allegation exists, the Court must consider those arguments on summary judgment not on a motion to dismiss, where the Court only evaluates the sufficiency of a plaintiff's allegations. *See Marvaso*, 971 F.3d at 607.

Here, the officers argue that their conduct, as pleaded, "fits squarely within the duties and scope of [their] employment." (ECF No. 46, PageID.865.) They further note Clark's gross negligence claim, within which he states that "[a]t all relevant times, the Officer Defendants were acting in the course of their employment for their respective employers, and within the scope of their authority performing the governmental function of investigating crimes." (ECF No. 1, PageID.56.) However, the Court must consider that, as part of his conspiracy claims, Clark alleges that the officers were not acting within the course of their employment, as they "sought a conviction of Mr. Clark for their own personal or professional benefit." (*Id.*, PageID.42, 46.)

The Court finds the preceding allegation sufficiently alleges that the officers were not acting within the course of their employment. Although the officers accurately argue that Clark alleged that the officers were acting within the scope of their employment, that allegation was made as to a different claim in the complaint, which is permissible under the alternative pleading standard. *See* Fed. R. Civ. P. 8(d)(3). Therefore, the Court finds that Clark has sufficiently pleaded his conspiracy claims and **DENIES** the officers' motion to dismiss on the basis that Counts II and III are barred by the intracorporate conspiracy doctrine.

### 2.    *Invidious Discriminatory Animus*

The officers argue that Count II should also be dismissed because Clark failed to plausibly allege invidious discriminatory animus. When stating a claim for conspiracy to interfere with civil rights under § 1985, a plaintiff must allege "some racial . . . invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). In defining discriminatory animus, both Clark and the officers rely on the rule set forth in *Kyles v. Cnty. of Oakland*, 725 F. Supp. 3d 692, 704 (E.D. Mich. 2024), which states:

> The equal protection provisions of § 1985 are directed at *invidious* discrimination and do not demand a showing of scienter or specific

16

intent. *Azar v. Conley*, 456 F.2d 1382, 1385-86 (6th Cir. 1972). Plaintiffs may satisfy the intent requirement either directly or circumstantially "by alleging and proving discriminatory conduct, practices, or the existence of significantly racially disproportionate impact." *Ready v. Ford Motor Co.*, 848 F.2d 193 (Table), 1988 WL 41153, at *4 (6th Cir. 1988) (quotations omitted). But a plaintiff must still plead specific facts from which discriminatory animus may be plausibly inferred. *Fox* [*v. Michigan State Police Dep't*], 173 F. App'x [372,] 376 [(6th Cir. 2006)].

Discriminatory purpose implies that "the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.'" *Farm Lab. Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 534 (6th Cir. 2002) (citing *Wayte v. United States,* 470 U.S. 598, 610, 105 (1985)) (quoting *Personnel Adm'r of Mass. v. Feeney,* 442 U.S. 256, 279 (1979)).

Here, the complaint includes statistics depicting the racially disproportionate rate of wrongful murder convictions both in Wayne County and nationally. Clark states:

149. Based on data from the National Registry of Exonerees ("NRE"), of the twelve exonerees convicted of murder in Wayne County between 1982 and 1992, only two were white (or 16%). By contrast, according to the U.S. Census Bureau, the population of Wayne County in 1980 was 35.5% Black and, by 1990, the population of Wayne County was just over 40% Black.

150. Nationally, innocent Black people are about seven-and-a-half times more likely to be convicted of murder than innocent white people, even though Black people who are convicted of murder are about 80% more likely to be innocent than other convicted murderers. The convictions that led to murder exonerations with Black defendants were almost 50% more likely to include misconduct by police officers than those with white defendants. On average Black murder exonerees spent three years longer in prison before release than white murder exonerees.

(ECF No. 1, PageID.37–38 (citations omitted).) The parties dispute whether the data provided sufficiently pleads discriminatory animus.

While the officers acknowledge the proffered statistics show a disproportionate impact on Black men, they argue that "[Clark] never actually alleges that the goal of the alleged conspiracy was to deny [Clark's] civil rights **because** he was Black." (ECF No. 51, PageID.1005.) The officers also highlight that Clark's race is never stated in the complaint. (ECF No. 46, PageID.867.) Clark asserts that the data provided is sufficient as it "set[s] forth the disproportionate racially discriminatory impact on Black persons of the DPD's policing around the time of Mr. Clark's arrest." (ECF No. 49, PageID.964.) Clark also contends that while the complaint may not explicitly state his race, it is reasonable to infer that he is Black. (*Id.*)

First, the Court will assume without finding that the complaint allows for the reasonable inference that Clark is Black.[3] Second, Clark's statistical proffer, without more, does not show that the officers conspired against Clark **because of** his race. *See Smith v. Silvernail*, No. 22-CV-00045, 2024 WL 665571, at *7 (S.D. Ohio Feb. 16, 2024) (finding that Plaintiff's inclusion of data "regarding the racial makeup of the relevant geographic area and racial disparities in incarceration," without more, failed to connect the "data to the set of facts surrounding Plaintiff's wrongful conviction.") Without a causal link between the data and the officers' alleged conspiracy, the Court finds that Clark failed to sufficiently plead the discriminatory animus required for a § 1985 conspiracy claim.[4] Thus, the Court **GRANTS** the officers' motion to dismiss Count II.

---

[3] The complaint states that witnesses identified a Black man as a suspect in Vasilije's murder. (ECF No. 1, PageID.17.) The complaint also includes data regarding the racially disproportionate rate of wrongful murder convictions both in Wayne County and nationally. (*Id.*, PageID.37-38.) In his response to the motion to dismiss, Clark asserts that he is Black. (ECF No. 49, PageID.964.)

[4] Clark highlights that the plaintiff in *Kyles* was permitted to seek leave to amend his § 1985 claim, specifically as to invidious discriminatory animus. The plaintiff subsequently filed an amended complaint. In addition to the statements already pleaded in the initial complaint, which the *Kyles* court found insufficient, the amended complaint included statistics like those pleaded in Clark's complaint. Ultimately, even with the additional statistics and a seemingly more robust proffer as to racially discriminatory statements made by the defendants, that court still found that discriminatory animus was not sufficiently pleaded and removed the §

### D.     Wrongful Institution of Legal Process—Malicious Prosecution (Count IV) and Malicious Prosecution in Violation of Michigan State Law (Count X)

The officers argue for dismissal of Clark's wrongful institution of legal process—malicious prosecution and state malicious prosecution claims on two grounds. First, they contend that Clark failed to plead the first element of both claims, specifically that the officers participated in the initiation of Clark's prosecution. The Court agrees that Clark failed to allege sufficient facts as to Blazs's participation in the prosecution, but it finds that Clark sufficiently alleged facts as to Paskternacki and Stewarts' participation. Second, the officers assert that Clark failed to plead his state malicious prosecution claim in avoidance of governmental immunity. The Court disagrees.

### 1.     *Initiation of Prosecution*

Under a § 1983 malicious prosecution claim, a plaintiff must first show "that a criminal prosecution was initiated against the plaintiff and that the defendant ma[d]e, influence[d], or participate[d] in the decision to prosecute." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010)

---

1985 claim from the amended complaint as futile. *See* Order Granting in Part Motion for Leave to File Amended Complaint, *Kyles v. Cnty. of Oakland*, No. 2:22-CV-12973-TGB-APP (Feb. 18, 2025), ECF No. 81.

(citations and internal quotation marks omitted). Similarly, malicious prosecution under Michigan state law requires a showing "that the defendant has initiated a criminal prosecution against [the plaintiff]." *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 21 (2003) (citations and internal quotation marks omitted).

Regarding both claims, the officers specifically argue that Clark "fails to plead that Officer Blazs, Officer Pasternacki, or Inspector Stewart *initiated, made, influenced, or participated in the decision to prosecute*." (ECF. No. 46, PageID.869–870) (emphasis added).) The first element of malicious prosecution "is met when an officer 'could reasonably foresee that his misconduct would contribute to an independent decision that results in a deprivation of liberty' and the misconduct actually does so." *Jackson*, 925 F.3d at 820 (citing *Sykes*, 625 F.3d at 316). "[P]roviding false information essential to the determination of probable cause can constitute 'participating in' or 'influencing' the decision to prosecute even when the officers do not testify at the grand jury hearing or at trial." *Caskey v. Fenton*, No. 22-3100, 2022 WL 16964963, at *9 (6th Cir. Nov. 16, 2022) (citation omitted).

Here, Blazs contends that, because Clark "does not accuse [him] of submitting false or misleading information to the prosecution," much less "any sort of communication between [him] and either the prosecutor or the court[,]" he is entitled to dismissal of Counts IV and X. (ECF No. 46, PageID.869.) Pasternacki and Stewart both argue that Clark "does not allege that either m[a]n made any materially false or misleading statements to the prosecutor, or that either otherwise made or participated in the prosecutor's decision to bring criminal charges." (*Id.*, at PageID.870.)  Pasternacki and Stewart further contend that Clark's pleading is insufficiently specific as to the conduct of each officer. (ECF No. 51, PageID.1006.)

As to Blazs, the Court agrees that Clark failed to sufficiently plead the first element of malicious prosecution. The complaint merely alleges that Blazs was *one of* the arresting officers and arrested Clark "despite having knowledge of the similarities between [the] February and May 1987 murders, and that Scott had already plead[ed] guilty to the May 1987 murder in July 1987." (ECF No. 1, PageID.14.) Even accepting these allegations as true and drawing all reasonable inferences therefrom, there is no indication that Blazs submitted any information to the

22

prosecutor or judge. The Court **GRANTS** the officers' motion to dismiss Blazs from Counts IV and X.

Regarding Pasternacki and Stewart, the complaint clearly alleges each officer was an integral member of the murder investigation. Pasternacki was "the Officer in Charge of the February 1987 murder." (ECF No. 1, PageID.6.) Stewart "was the Commanding Officer of the February 1987 murder and … Pasternacki reported to … Stewart." (*Id.*, PageID.7.)  Clark asserts that Pasternacki and Stewart knew of both the February and May murders and either: (1) failed to test what would have been favorable evidence; or (2) did so and never produced the results to the prosecutor. (*Id.*, PageID.6–8.) Clark further alleges that the officers "influenced, conspired, or participated in the initiation of Mr. Clark's criminal prosecution by … supplying false information and omitting material information … in requesting an arrest warrant, swearing to facts in support of probable cause, and/or lying at the preliminary examination." (*Id.*, PageID.48–49.) Clark then specifically identifies the false statements and material omissions as "all the evidence related to Scott's May 1987 murder, Scott's mugshots, the knife used by the victim

in the February 1987 murder, and ballistic evidence from the February and May 1987 murders." (*Id.*, PageID.49.)

Considering the leadership roles played by Pasternacki and Stewart in the February murder investigation, the factual similarities and physical and temporal proximity of the February and May murders, and the allegations pleaded in the complaint as to the officers' false statements and material omissions, it is plausible that both officers participated in the initiation of Clark's prosecution. Thus, the Court disagrees that Clark's complaint fails to adequately plead the first element of malicious prosecution and **DENIES** the officers' motion to dismiss Counts IV and X as to Pasternacki and Stewart on that basis.

### 2.   *Governmental Immunity*

The officers next argue that Clark's state malicious prosecution claim is barred by governmental immunity.[5] Under Michigan law, a

---

[5] The officers argue that Cark's gross negligence claim actually alleges the intentional tort of malicious prosecution, and thus, must also be pleaded in avoidance of governmental immunity. The Court rejects this argument. As discussed in the gross negligence section, Clark's gross negligence claim sufficiently alleges negligent conduct; therefore, it does not warrant a governmental immunity analysis. *See Kaczynski v. Muskegon River Youth Home, Inc.*, No. 1:20-CV-126, 2021 WL 12310822, at *5 (W.D. Mich. Nov. 17, 2021) (citing Mich. Comp. Laws § 691.1407(2)(c)) ("[G]overnmental officers are not entitled to immunity if their conduct arises to gross negligence.")

governmental employee is immune from intentional tort liability if: (1) the acts at issue were committed in the course of the employee's employment and the employee reasonably believed that the acts were within the scope of the employee's authority, (2) the acts were made in good faith, and (3) the acts are not ministerial in nature. *Odom v. Wayne Cnty.*, 482 Mich. 459, 473–475 (2008). "A governmental employee fails the 'good faith' standard under the second prong when they act maliciously, recklessly, capriciously, or willfully and corruptly." *Peterson v. Heymes*, 931 F.3d 546, 557 (6th Cir. 2019) (citation omitted). "[G]overnmental immunity is an affirmative defense" and "Officer Defendants carry the burden to raise and establish [it]." *Id.*, *see also Odom*, 482 Mich. at 475 ("[T]he proponent of individual immunity must establish that he acted without malice.").

In disputing the applicability of governmental immunity, the parties primarily disagree on the second element: whether the officers were acting in good faith. Because it is determinative, the Court focuses its analysis solely on this element. The officers argue that the complaint "fails to include any facts or even specific allegations of malice." (ECF No.

46, PageID.873–874.) Clark contends that the record belies this assertion, and the Court agrees.

The complaint alleges that: (1) Clark's arrest and prosecution were "initiated maliciously by the Officer Defendants," (ECF No. 1, PageID.58); (2) "Defendants … made a conscious, knowing, and intentional choice not to reveal exculpatory evidence to Mr. Clark," (*Id.*, PageID.35), and (3) "Defendants engaged in this unconstitutional action or inaction, attempting to ensure that Mr. Clark was convicted despite knowing not only that Mr. Clark was innocent, but also knowing who the real murderer was." (*Id.*, PageID.33–34). The complaint also clearly outlines the alleged exculpatory evidence. Accepting these allegations as true, the Court finds that Clark sufficiently alleged facts showing that the officers were not acting in good faith. Thus, the Court **DENIES** the officers' motion to dismiss Count X based on governmental immunity.

## E.    Continued Detention Without Probable Cause (Count V)

The officers argue that Clark's claim for continued detention without probable cause warrants dismissal because it is not a separate claim from what Clark terms "wrongful institution of legal process—

26

malicious prosecution" (Count IV). The Court disagrees that Count IV and V are the same.

The Sixth Circuit recognizes "two types of § 1983 claims, both sounding in the Fourth Amendment, that are sometimes referred to as 'malicious prosecution' claims. One is for the wrongful institution of legal process (which is the type most properly called a 'malicious prosecution' claim) and the other is for continued detention without probable cause." *Jackson*, 925 F.3d at 820 n.15 (6th Cir. 2019) (citing *Cleary v. Cnty. of Macomb*, 409 F. App'x 890, 898 (6th Cir. 2011); *see Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017) (citations omitted) (explaining that while "the prototypical case of malicious prosecution involves an official who fabricates evidence that leads to the wrongful arrest or indictment of an innocent person[,] … the § 1983 version of 'malicious prosecution' is not limited to the institution of proceedings; it can also support a claim for 'continued detention without probable cause.'"); *see also Cleary*, 409 F. App'x at 898 (6th Cir. 2011) (citing *Gregory v. City of Louisville,* 444 F. 725 (6th Cir.2006)) (Sixth Circuit held that a plaintiff's allegation of detention without probable cause "[was] not [a claim] for malicious prosecution (though such a claim may still be raised, as … explained in

*Sykes v. Anderson,* 625 F.3d 294 (6th Cir.2010)), but instead one for 'continued detention without probable cause' in violation of the Fourth Amendment.").

Based on *Jackson*, the Court finds that Clark's claims for wrongful institution of legal process and continued detention without probable cause are separate, viable claims, both stemming from the Fourth Amendment. 925 F.3d at 820 n.15. While terminology may vary as to what is considered "malicious prosecution," the Sixth Circuit has explicitly differentiated the two claims. Here, Clark pleaded a claim for continued detention without probable cause, a separate, cognizable claim in the Sixth Circuit, so the Court **DENIES** the officers' motion to dismiss Count V on the basis that it is duplicative of Count IV.

### F.    Gross Negligence (Count IX)

The officers argue for dismissal of Clark's gross negligence claim on two grounds. First, they argue that, as pleaded, his gross negligence claim is redundant of his state malicious prosecution claim and, thus, ripe for dismissal. The Court disagrees and finds the two claims sufficiently distinct. Second, the officers argue that Clark's gross negligence claim is time-barred. The Court also disagrees, as this claim

implicates the validity of Clark's conviction; therefore, the accrual date began once his conviction was overturned.

### 1. Redundancy

Michigan "has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254 (6th Cir. 2010) *(quoting VanVorous v. Burmeister*, 262 Mich. App. 467, 483 (2004). However, "plaintiffs are barred from bringing gross-negligence claims *only if* those claims are '*fully premised*' on alleged intentional torts." *Richards v. City of Jackson, Michigan*, 788 F. App'x 324, 336–37 (6th Cir. 2019) (citation omitted and emphasis added). The Sixth Circuit "has sustained gross-negligence claims premised on allegations that officers were 'grossly negligent in failing to follow certain procedures and statutory obligations' *or* where the plaintiff can otherwise 'show that the defendant owed him a duty of care.'" *Id.* (citations omitted and emphasis added). Thus, an allegation of gross negligence can be "based on the same incident as [an] intentional tort" and pleaded as an alternative basis *if* it is not "fully premised" on the intentional tort.  *Id.*

The officers argue that Clark's gross negligence claim is premised on his state law claim of malicious prosecution, an intentional tort. (ECF No. 46, PageID.872.) They assert that Clark is attempting "to transform an intentional tort into a claim of gross negligence, [which] is routinely rejected by Michigan courts." (*Id.*)  Beyond citing to a single paragraph in the complaint, the officers provide no additional analysis to develop this argument and simply state that they are entitled to dismissal due to redundancy.

Clark contends that his allegation of gross negligence is sufficiently distinct from his state claim of malicious prosecution. The Court agrees. Though the claim is based on the same incident, Clark specifically alleges that "[t]he Officer Defendants were under a duty to avoid engaging in conduct so reckless as to demonstrate a substantial lack of concern for whether injury results." (ECF No. 1, PageID.56.) He then states that the "Officer Defendants breached their duty by failing to diligently investigate ..." (*Id.*, PageID.57.) Clark does not allege failure to investigate as a basis for his malicious prosecution claim. With minimal argument from the officers on this point and viewing the complaint in the light most favorable to Clark, the Court finds that Clark's gross

negligence claim is ***not*** fully premised on his malicious prosecution claim and **DENIES** the officers' motion to dismiss Count IX on this basis.

### 2.    *Statute of Limitations*

The officers argue that Clark's gross negligence claim is barred by the applicable statute of limitations. In support, they cite to Mich. Comp. Laws § 600.5805(2), which sets forth a three-year statute of limitations. As to accrual, they cite to § 600.5827 which states, "[e]xcept as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues … at the time the wrong upon which the claim is based was done regardless of the time when damage results."

Clark agrees that a three-year statute of limitations applies. However, he contends that, because his gross negligence claim implicates the validity of his state conviction, the Court should find that the claim did not start to accrue until April 2024, when his conviction was overturned. (ECF No. 49, PageID.975.) Clark relies on the principles set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). There, the Court held that if a defendant's damages suit under § 1983 would "necessarily imply the invalidity of his conviction," the defendant must first "demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487.

Under *Heck*, "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id.* at 489–490.

Acknowledging that *Heck* is directed at federal § 1983 claims, Clark cites to cases that have applied the *Heck* bar to state law claims. *See Robinson v. Lipps*, No. 6:18-CV-01062, 2021 WL 865986, at *8 (W.D. La. Mar. 5, 2021) (citation omitted) ("tort claims that stem from the arrest … including negligence, and gross negligence … are also barred by the *Heck* rationale precluding collateral attack of a criminal conviction through a civil proceeding"); *Kelley v. Reyes*, No. 2:19-CV-17911, 2020 WL 3567285, at *6 (D.N.J. July 1, 2020) (applying the *Heck* principal to common-law torts that arise out of wrongful convictions and tolling the statute of limitation until there is a favorable termination in the case). The officers do not rebut this argument in their reply.

The Court, at this stage in the litigation, finds Clark's arguments and the caselaw he cites persuasive. The complaint alleges that the officers' grossly negligent conduct "was the proximate cause of Mr. Clark's arrest, prosecution, and conviction." (ECF No. 1, PageID.57.) Accepting these allegations as true and viewing the complaint in the light

most favorable to Clark, the Court agrees that the gross negligence claim implicates the validity of Clark's wrongful conviction, and thus, it did not start to accrue until the conviction was overturned in April 2024. Considering Clark filed his complaint in July 2024, he is well within the three-year statute of limitations. The Court thus **DENIES** the officers' motion to dismiss Count IX based on it being time-barred.

## V.    CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that the motion to dismiss Count II is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion to dismiss Counts IV and X is **GRANTED as to Blazs**.

**IT IS FURTHER ORDERED** that the motion to dismiss is **DENIED** on all other bases.

**IT IS FURTHER ORDERED** that, pursuant to Federal Rule of Civil Procedure 4(m) and for lack of good cause shown by Clark for failure to serve the following defendants despite notice from defendants nearly a year ago (*see, e.g.,* ECF No. 46, PageID.849 n.1, 850, 858, 859 n.1, 864, 865), Peter Szymanski, David Zablocki, Rashelle Pettway, William Presley, David Kramer, William Avery, Gregory Trozak, Raymond

Nemeckay, James Flemming, and Charles David are **DISMISSED** from this action, without prejudice.

The following claims and defendants remain in this action:[6]

- Count I: § 1983 claim for *Brady* violations against Pasternacki, Stewart, and Blazs

- Count III: § 1983 claim for conspiracy against Pasternacki, Stewart, and Blazs

- Count IV: § 1983 claim for wrongful institution of legal process— malicious prosecution against Pasternacki and Stewart

- Count V: § 1983  claim for detention without probable cause against Pasternacki, Stewart, and Blazs

- Count IX: gross negligence claim under MCL § 691.1407 against Pasternacki, Stewart, and Blazs

- Count X: malicious prosecution claim under Michigan law against Pasternacki and Stewart


**SO ORDERED**.

**s/Jonathan J.C. Grey**
JONATHAN J.C. GREY
United States District Judge

DATE: December 5, 2025

---

[6] As noted above, the Court previously dismissed Counts VI and VII. In addition, Clark's complaint does not include a Count VIII; instead, it skips from Count VII to Count IX. (*See* ECF No. 1, PageID.53–56.)

## <u>Certificate of Service</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 5, 2025.

**<u>s/ S. Osorio</u>**
Sandra Osorio
Case Manager
